**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALAMO DRAFTHOUSE CINEMAS | § | Case No. 21-10474 (MFW) |
| HOLDINGS, LLC, *et al.*[1] | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Ref. D.I. 36** |
| | § | **Objection Deadline: April 22, 2021, 4:00 p.m. ET** |
| | § | **Hearing Date: May 3, 2021, 11:30 a.m. ET** |

**LA CANTERA DEVELOPMENT COMPANY LLC AND
LA CANTERA CROSSING RETAIL, LLC'S LIMITED OBJECTION TO
DEBTORS' MOTION TO APPROVE THE SALE OF ALL OR SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES**

La Cantera Crossing Retail, LLC and La Cantera Development Company LLC (together, "Cantera Crossing") files this its Limited Objection (the "Objection") to *Debtors' Motion For Entry of: (A) An Order (I) Scheduling a Hearing On the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Approving the Debtors' Entry Into the Stalking Horse APA and All of its Terms, Including*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Alamo Drafthouse Cinemas Holdings, LLC (2205); Alamo Drafthouse Cinemas, LLC (5717); Alamo Vineland, LLC (1626); Alamo League Investments GP, LLC (1811); Alamo League Investments, Ltd. (7227); Alamo South Lamar GP, LLC (3632); Alamo South Lamar, LP (4563); Alamo Drafthouse Raleigh, LLC (5979); Alamo DH Anderson Lane, LLC (3642); Alamo Yonkers, LLC (4971); Alamo Mission, LLC (2284); Alamo Ritz, LLC (9465); Alamo Mueller, LLC (1221); Mondo Tees, LLC (6900); Alamo City Foundry, LLC (6092); Alamo Mainstreet, LLC (2052); Alamo City Point, LLC (3691); Alamo Liberty, LLC (5755); Alamo Satown, LLC (6197); Alamo Marketplace, LLC (7041); Alamo Stone Oak, LLC (8398); Alamo Westlakes, LLC (4931); Alamo Park North, LLC (1252); Alamo North SA, LLC (6623); Alamo Avenue B, LLC (8950); Alamo Slaughter Lane GP, LLC (6968); Alamo Slaughter Lane, Ltd. (5341); Alamo Cinema Group I GP, LLC (9537); Alamo Cinema Group I, LP (9656); Alamo Westminster, LLC (8906); Alamo Staten Island, LLC (7781); Alamo Aspen Grove, LLC (7786); Alamo Lakeline, LLC (5294); Alamo Sloans, LLC (9343). The location of the Debtors' service address is: 3908 Avenue B, Austin, Texas 78751.

1

*Bidding Protections, and (IV) Granting Related Relief; and (B) An Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than the Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Sale Motion") [Docket No. 36] and in support thereof, respectfully asserts the following:

## I. INTRODUCTION

1. Cantera Crossing owns the real estate that makes up the La Cantera Shopping Center, a shopping center in San Antonio, Texas, in which the Debtor Alamo North purchased that certain Theater Tract in late 2019. The La Cantera Shopping Center and the Theater Tract are expressly subject to the La Cantera Covenants—a set of three covenants and dedications that both benefit and burden owners of the real property located therein. Cantera Crossing files this Limited Objection to the proposed Sale[2] under the Sale Motion to the extent that the Debtors seek to sell the Theater Tract free and clear of the La Cantera Covenants. The La Cantera Covenants are covenants that run with the land and section 363(f) does not permit the Debtors to sell the Theater Tract free and clear of the La Cantera Covenants.

## II. RELEVANT BACKGROUND

2. On March 3, 2021, (the "Petition Date"), Alamo Drafthouse Cinema Holdings, LLC (the "Debtor") and its affiliated debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this "Court"), commencing these bankruptcy cases (the "Chapter 11 Cases").

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

3.      Prior to the Petition Date, on December 20, 2019, the Debtor North SA, LLC ("Alamo North") purchased a tract of real property containing approximately 3.519 acres located near the intersection of NWC Loop 1604 and La Cantera Parkway in the City of San Antonio, Bexar County, Texas (the "Theater Tract") in a shopping center commonly known as La Cantera Crossing Shopping Center ("La Cantera Shopping Center").  The below demonstrates the location of the Theater Tract within the La Cantera Shopping Center.



4.      In 1996, La Cantera Development Company created a general plan of development for an approximately 1200-acre mixed use community in San Antonio, Texas, known as La Cantera, which is subject to the La Cantera Master Covenants and Easements (the "Master Declaration"), recorded in the official public records of Bexar County, Texas.  A true and correct copy of the Master Declaration is attached hereto as **Exhibit A**.

5.      The Master Declaration expressly provides that it runs with the land, and that "the covenants and easements contained therein shall bind all parties having any right, title, or interest in the real properties or any part thereof, their heirs, successors, successors-in-title, and assigns, and shall inure to the benefit of the [c]ommunity [o]rganization and each owner of any part of such real property."  *See* Ex. A, p. 1.  Among other things, the Master Declaration implements a set of "Master Covenants," which obligate all property owners in the Shopping Center to share in the cost of administering the affairs of the Shopping Center as well as of owning, operating, and maintaining certain property and facilities in the Shopping Center.

6.      The Shopping Center is also subject to the terms of that certain La Cantera Declaration of Commercial Covenants, Conditions, and Restrictions entered into by La Cantera Development Company, and recorded in the official public records of Bexar County, Texas (the "<u>Commercial Covenants Declaration</u>").  A true and correct copy of the Commercial Covenants Declaration is attached hereto as **Exhibit B**.

7.      The Commercial Covenants Declaration expressly provides that all property subject thereto (which includes the Theater Tract) "shall be held, sold, and conveyed subject to the following easements, restrictions, covenants, and conditions, which shall run with the title to the real property subjected to these Commercial Covenants.  These Commercial Covenants shall be binding on and shall inure to the benefit of all parties having any right, title, or interest in any portion of the [c]ommercial [p]roperties, their heirs, successors, successors-in-title, and assigns."  *See* Ex. B, preamble, § 2.1 (providing that the Declarant "has established a general plan of development for all of the La Cantera Community, and in furtherance of such development plan, has subjected all of the real property comprising the La Cantera Community to the Master Covenants").  Among other things, the Commercial Covenants impose certain maintenance,

insurance, and use restrictions and rules, based upon and tied to community-wide standards, on each owner in the La Cantera Shopping Center.

8.  Contemporaneously with its purchase of the Theater Tract, the Debtor Alamo North (as Theater Owner thereunder) and Cantera Crossing (as Declarant thereunder) entered into that certain Declaration of Protective Covenants and Common Area Maintenance Agreement (the "Protective Covenants Declaration") dated December 20, 2019, and filed of record in the official records of Bexar County, Texas.[3]  A true and correct copy of the Protective Covenants Declaration is attached hereto as **Exhibit C**.

9.  The Protective Covenants Declaration, among other things, set forth that the Shopping Center is subject to the Commercial Covenants Declaration.  See Ex. C, p. 1. The Protective Covenants Declaration promulgates "certain standards and restrictions governing the use, development, and operation" of the Theater Tract in the Shopping Center, including certain monetary, maintenance, and operational obligations. See Ex. C.  It specifically sets forth rules and regulations for the "Overflow Parking Tract," prohibiting modification of the access drives or parking areas situated within that approximately 4.061-acre parcel "in any manner that would materially and negatively affect the access to the Overflow Parking Tract."  See Ex. C, ¶ 3. It also specifically obligated the Debtor Alamo North to pay all taxes attributable to the Theater Tract and to pay for fifty percent (50%) of all real property taxes and assessments levied against the Overflow Parking Tract, as well as its part of common area costs associated therewith, as more fully set forth therein.  See Ex. C, ¶ 6. It further provided for certain easements. See Ex. C, ¶ 8.

---

[3] In addition, the Debtor Alamo North entered into an agreement (the "Development Agreement") for the development of the Theater Tract.

10. The Protective Covenants sets forth that each of the easements, covenants, restrictions, and the provisions contained therein are covenants that run with the land and: (a) are made for the direct common mutual and reciprocal benefit of each Tract; (b) will create mutual equitable servitudes upon each Tract in favor of the land benefitted; (c) will bind every person having a fee, leasehold or other interest in any portion of the Theater Tract at any time or from time to time to the extent that such portion is affected or bound by the covenant, restriction or provision in question, or that the covenant, restriction or provision is to be formed on such portions; and (d) will inure to the benefit of the parties and their respective successors and assigns as to the Theater Tract. *See* Ex. C, ¶ 19.

11. The Debtor Alamo North's purchase of the Theater Tract was thus subject to the Master Declaration, the Commercial Covenants Declaration, the Protective Covenants Declaration (collectively, the "La Cantera Covenants"). Any sale, including the Sale requested in the Sale Motion, is also subject to the La Cantera Declarations. Cantera Crossing accordingly files this limited objection to make expressly clear that the Sale, if approved, must be subject to the La Cantera Declarations as they are covenants running with the land under applicable Texas law. To the extent that the Debtors are asking for permission to close the Sale free and clear of the La Cantera Declarations, the Court should refuse to grant that request given that they are covenants running with the land not subject to section 363(f) of the Bankruptcy Code.

12. On March 4, 2021, the Debtors filed the Sale Motion under which they propose to sell all, or substantially all of the Debtors' assets, free and clear of all liens, claims, interests, encumbrances.

13. Attached to the Sale Motion is the proposed asset purchase agreement with the stalking horse purchaser (the "Stalking Horse APA").

14. The Stalking Horse APA in section 5.3 references a "Schedule 5.3(a)" of the Seller Disclosure Schedule as including owned real estate. Counsel to the Debtor has informed the undersigned that the La Cantera Property is included therein and that the Sale Motion is a request to sell the La Cantera Property.

15. The Stalking Horse APA provides that the Sale is not free and clear of "Permitted Liens." Relevant to this Objection, the term "Permitted Liens" is defined in the Stalking Horse APA as "easements, covenants, conditions, restrictions and other similar matters affecting title to such Leased Real Estate and other title encumbrances which encumber the Leased Real Estate as of the date hereof and which do not, individually or in the aggregate, materially impair the use, occupancy, maintenance, repair or development of such Leased Real Estate or the operation of the Business." *See* Stalking Horse APA, p. 11. It is at best unclear whether the La Cantera Covenants would constitute "Permitted Liens" under the current proposed version of the Stalking Horse APA.

16. La Cantera's Objection would be resolved by inclusion of clarifying language (reflected below in the underlined red language) with respect to the definition of Permitted Liens so that it provides as follows:

> "**Permitted Liens**" means: (i) statutory Liens for current and future property taxes, assessments or other governmental charges, including water and sewage charges, not yet due and payable, or being contested in good faith and for which adequate reserves have been taken in accordance with GAAP; (ii) present and future zoning, building codes and other land use Laws regulating the use or occupancy of any Leased Real Estate or <u>owned real estate listed on Schedule 5.3(a) of the Seller Disclosure Schedule, including the owned real estate situated in the shopping center commonly known as the "La Cantera Crossing Shopping Center," located in the City of San Antonio, Bexar County, Texas (the **"La Cantera Property"**)</u> or the activities conducted thereon which are imposed by any Governmental Authority having jurisdiction over such Leased Real Estate <u>or the La Cantera Property</u> which are not violated by (a) the current use or occupancy of such Leased Real Estate <u>or the La Cantera Property,</u> (b) the proposed use, occupancy or development thereof by the Business as currently contemplated or (c) the operation of the Business or

7

any violation of which could not have a Material Adverse Effect on the Business; and (iii) easements, covenants, conditions, restrictions and other similar matters affecting title to such Leased Real Estate and the La Cantera Property, other title encumbrances that encumber the Leased Real Estate or the La Cantera Property as of the date hereof and which do not, individually or in the aggregate, materially impair the use, occupancy, maintenance, repair or development of such Leased Real Estate or the operation of the Business and are recorded in the real property records in the County in which same is located, to include with respect to the La Cantera Property, the (1) La Cantera Master Covenants and Easements; (2) Declaration of Protective Covenants and Common Area Maintenance Agreement; and (3) La Cantera Declaration of Commercial Covenants, Conditions, and Restrictions (collectively, the "**La Cantera Covenants**").

17. In addition, the Stalking Horse APA provides for the Purchaser to "assume and be responsible for, certain "Assumed Liabilities." Due to the nature of the La Cantera Covenants, the Purchaser shall also be liable and obligated thereunder. Accordingly, La Cantera's limited objection would be resolved through the inclusion of the proposed underlined red language, in any approved APA to the definition of "Assumed Liabilities:"

> **Section 2.3 Assumed Liabilities**. On the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser shall (or shall cause its designated Affiliate or Affiliates to) assume and be responsible for, effective as of the Closing, and thereafter pay, honor, perform and discharge as and when due, all of the Assumed Liabilities.
>
> "**Assumed Liabilities**" means the Liabilities and obligations of Sellers set forth as follows:
> (a) all Liabilities of Sellers relating to or arising under Purchased Contracts, including all Cure Costs up to the Cure Costs Cap;
> (b) all Liabilities of Sellers (other than in respect of Taxes) relating to, or arising in respect of, the Purchased Assets accruing, arising out of or relating to (i) events, occurrences, acts or omissions occurring or existing after the Closing Date or (ii) the operation of the Business or the Purchased Assets after the Closing Date, including for the avoidance of doubt any and all liabilities or obligations arising under or related to the La Cantera Covenants;

18. Absent inclusion of language substantially similar to the foregoing to any order granting the Sale Motion and any approved APA, Cantera Crossing objects to the Sale of the Theater Tract to the extent it is free and clear of the La Cantera Covenants. The Debtors may not

8

sell the Theater Tract free and clear of the La Cantera Covenants pursuant to section 363(f) of the Bankruptcy Code.

### III. LIMITED OBJECTION

19. Section 363 of the Bankruptcy Code governs the use, lease, or sale of property of the estate. Under section 363(b), a debtor in possession may sell property of the estate outside of the ordinary course of business after notice and a hearing.

20. Section 363(f) of the Bankruptcy Code permits a debtor to sell property of the estate free and clear of any interest in such property of an entity other than the estate, only if:

(1) the applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The Debtors may not sell the Theater Tract free and clear of the La Cantera Covenants under section 363(f) because the La Cantera Covenants are covenants that run with the land and no provision of section 363(f) is satisfied.

21. Sections 363(f)(2)-(4) do not apply. Cantera Crossing does not consent to a sale free and clear of the La Cantera Covenants, the La Cantera Covenants are not liens, and the La Cantera Covenants are not subject to bona fide dispute.

22. Section 363(f)(1) does not apply because applicable nonbankruptcy law does not permit the sale of the Theater Tract free and clear of the La Cantera Covenants. The La Cantera Covenants themselves bind successors consistent with applicable law. In addition, section 363(f)(5) also does not apply because Cantera Crossing could not be compelled, in either a legal

or equitable proceeding under applicable law to accept a money satisfaction for the La Cantera Covenants.

23. The interests in the La Cantera Covenants are covenants that run with the land under applicable state law. They are part and parcel of restrictions and easements of a land development plan for the La Cantera Shopping Center for which Texas law does not permit the Sale free and clear of the La Cantera Covenants. The La Cantera Covenants are governed by Texas law. Under Texas law, courts enforce covenants like the La Cantera Covenants as part of a general plan or scheme. *See Green v. Gerner*, 289 S.W. 999 (1927) (concluding that owners of adjoining lots in subdivision may have right to enjoin violations of restrictive covenant in deed from common grantor, where covenant is a part of "general scheme or plan" as to buildings to be erected in neighborhood.).

24. In Texas, a covenant runs with the land when it: (a) touches and concerns the land; (b) relates to a thing in existence or specifically binds the parties and their assigns; (c) is intended by the original parties to run with the land; (d) when the successor to the burden has notice; and (e) there is privity of estate between the parties for the creation of a covenant that runs with the land. *Newco Energy v. Energytec, Inc. (In re Energytec)*, 739 F.3d 215, 221 (5th Cir. 2013) (citing *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987)). All of those requirements are met with respect to each of the La Cantera Covenants.

25. Section 363(f)(1) does not permit the sale of the Theater Tract free and clear because successors themselves are bound to La Cantera Covenants. With respect to section 363(f)(5), under applicable Texas law, Cantera Crossing cannot be compelled to accept a money satisfaction of its interests in the La Cantera Covenants. The covenants in the La Cantera Covenants relate not just to payment of money. Instead, they relate directly to the maintenance of

common facilities shared and used by multiple owners in the La Cantera Shopping Center. That is precisely why they were created and constitute covenants that run with the land: so that they would be binding against subsequent purchasers because they are for the benefit of the La Cantera Shopping Center as a whole and each other individual owner of property therein. *See Wayne Harwell Properties v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App.—San Antonio 1997, pet. denied).

26.     Under Texas law, every "purchaser is bound by every recital, reference, and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." *Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 908 (Tex. 1982).  And, the words "subject to," as used in a conveyance, incorporate the terms and conditions of the referenced document and define the estate conveyed and the nature, extent, and character of such estate. *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (Tex. 1956).  In fact, Texas courts enforce similar restrictions that run with the land even over the sacrosanct Texas homestead exemption. *Inwood North Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 635-36 (Tex. 1987) (holding that an association could foreclose for breach of covenants against a Texas homestead, remarking that "[t]he concept of community association and mandatory membership is an inherent property interest.  The declaration defines the rights and obligations of property ownership.  The mutual and reciprocal obligation undertaken by all purchasers [in the development] creates an inherent property interest possessed by each purchaser. The obligation to pay association dues and the corresponding right to demand that maximum services be provided within the association's budget are characteristics of that property right").

27.     The Debtor Alamo North acquired its interest in the Theater Tract subject to, contingent upon, and burdened with the La Cantera Covenants.  Any purchaser, including the

Stalking Horse Purchaser, is on notice with respect to the La Cantera Covenants. Any purchaser of the Theater Tract from the Debtor Alamo North is likewise benefited and burdened by the La Cantera Covenants. No provision of section 363(f) applies to permit the Sale of the Theater Tract free and clear of the La Cantera Covenants. Accordingly, the Court should deny the Sale Motion to the extent it seeks to sell the Theater Tract free and clear of the La Cantera Covenants.

WHEREFORE, PREMISES CONSIDERED, Cantera Crossing respectfully requests that the Debtors' Sale Motion be denied to the extent it seeks to sell the La Cantera Property free and clear of the La Cantera Covenants, as well as all other and further relief to which Cantera Crossing may show itself entitled.

[Remainder of Page Intentionally Left Blank]

Dated: April 22, 2021.

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

*/s/   Lisa Bittle Tancredi*
Matthew P. Ward (Del. Bar No. 4471)
Lisa Bittle Tancredi (Del. Bar No. 4657)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320 – Telephone
(302) 252-4330 – Facsimile
Email: Matthew.Ward@wbd-us.com
Email: Lisa.Tancredi@wbd-us.com

and

JACKSON WALKER LLP
112 E. Pecan St., Suite 2400
San Antonio, TX 78205
(210) 978-7700 – Telephone
(210) 236-2002 – Facsimile

/s/ *Jennifer F. Wertz*
Jennifer F. Wertz (*pro hac vice* to be filed)
TX State Bar No. 24072822
(512) 236-2247 – Direct Phone
(512) 391-2147 – Direct Fax
Email: jwertz@jw.com

Stephen Calhoun (*pro hac vice* to be filed)
TX State Bar No. 24069457
(210) 978-7713 – Direct Phone
(210) 242-4613 – Direct Fax
Email: scalhoun@jw.com

**COUNSEL FOR LA CANTERA CROSSING RETAIL, LLC & LA CANTERA DEVELOPMENT COMPANY, LLC**