# **EXHIBIT B**

La Cantera Declaration of Commercial Covenants, Conditions, and Restrictions

After recording please return to:

96-  0040610

Kenneth W. Smith
VP, Real Estate Counsel
United Services Automobile Assoc.
9800 Fredericksburg Road, C3W
San Antonio, Texas 78288

## LA CANTERA DECLARATION OF COMMERCIAL COVENANTS,

## CONDITIONS AND RESTRICTIONS

VOL 6701 PG 0876

### HYATT & STUBBLEFIELD, P.C.

**Attorneys and Counselors**
**1200 Peachtree Center South Tower**
**225 Peachtree Street, N.E.**
**Atlanta, Georgia  30303**
**(404) 659-6600**

## - TABLE OF CONTENTS -

**ARTICLE**    **SECTION**                                                                **PAGE**

I.    **DEFINITIONS** ................................................ 1

    1.1.    Advisory Committee ...................................... 1
    1.2.    Area of Common Responsibility .............................. 1
    1.3.    Board of Directors; Board ................................. 1
    1.4.    By-Laws ............................................... 2
    1.5.    Commercial Owner ...................................... 2
    1.6.    Commercial Parcel ...................................... 2
    1.7.    Commercial Properties ................................... 2
    1.8.    Community Organization .................................. 2
    1.9.    Community-Wide Standard ................................. 2
    1.10.    Declarant ............................................. 2
    1.11.    Design Guidelines ...................................... 2
    1.12.    Governing Documents .................................... 2
    1.13.    La Cantera Community ................................... 2
    1.14.    Master Covenants ...................................... 3
    1.15.    Person ............................................... 3
    1.16.    Public Records ......................................... 3
    1.17.    Supplemental Declaration ................................. 3
    1.18.    Use Restrictions and Rules ................................ 3

II.    **LA CANTERA COMMUNITY** ................................. 3

    2.1.    Organization of La Cantera Community ........................ 3
    2.2.    Function of Community Organization ......................... 3
    2.3.    Advisory Committee ..................................... 4

III.    **RIGHTS AND OBLIGATIONS OF THE COMMUNITY ORGANIZATION** ........ 4

    3.1.    Enforcement .......................................... 4
    3.2.    Indemnification ........................................ 5
    3.3.    Security .............................................. 6
    3.4.    Right of Entry ......................................... 6

IV.    **MAINTENANCE** ........................................... 7

    4.1.    Owner's Responsibility .................................. 7
    4.2.    Standard of Performance ................................. 7

| ARTICLE | SECTION | PAGE |
|---|---|---|

**V.    INSURANCE OBLIGATIONS AND CASUALTY LOSSES** ................... 8

    5.1.    Community Organization Insurance ............................... 8
    5.2.    Commercial Owner's Insurance ................................ 8

**VI.    USE RESTRICTIONS AND RULES** ................................ 9

    6.1.    Plan of Development; Applicability; Effect ........................... 9
    6.2.    Authority to Promulgate Use Restrictions and Rules ................... 9
    6.3.    Owner's Acknowledgment ................................... 10
    6.4.    Rights of Commercial Owners ................................. 10

**VII.    ARCHITECTURAL STANDARDS** ............................... 11

    7.1.    General ............................................. 11
    7.2.    Architectural Review Committee ............................... 11
    7.3.    Guidelines and Procedures .................................. 12
    7.4.    No Waiver of Future Approvals ............................... 14
    7.5.    Variances ............................................ 14
    7.6.    Limitation of Liability ..................................... 14
    7.7.    Enforcement .......................................... 15

**VIII.    ASSESSMENTS** ...................................... 15

**IX.    ANNEXATION AND WITHDRAWAL OF PROPERTY** ..................... 17

    9.1.    Annexation Without Approval of Membership ...................... 17
    9.2.    Annexation With Approval of Commercial Owners ................... 17
    9.3.    Withdrawal of Property .................................... 18
    9.4.    Additional Covenants and Easements ........................... 18
    9.5.    Amendment .......................................... 18

**X.    DECLARANT'S RIGHTS** ................................... 18

    10.1.    Transfer of Declarant Rights ................................ 18
    10.2.    Approval of Additional Covenants ............................. 19
    10.3.    Amendment ......................................... 19

**ARTICLE    SECTION**

**PAGE**

XI.  **GENERAL PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    11.1.  Duration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    11.2.  Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    11.3.  Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    11.4.  Cumulative Effect; Conflict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    11.5.  Commercial Ownership of Commercial Parcel by Government . . . . . . . . . . . . . . . 21
    11.6.  Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    11.7.  Notice of Sale or Transfer of Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    11.8.  Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    11.9.  Captions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    11.10. Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    11.11. Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## - <u>TABLE OF EXHIBITS</u> -

| <u>Exhibit</u> | <u>Subject Matter</u> |
|---|---|
| "A" | Land Initially Submitted |
| "B" | Land Subject to Annexation |
| "C" | Initial Use Restrictions and Rules |

VOL 6701 PG0880

## LA CANTERA DECLARATION OF COMMERCIAL
## COVENANTS, CONDITIONS AND RESTRICTIONS

THIS LA CANTERA DECLARATION OF COMMERCIAL COVENANTS, CONDITIONS AND RESTRICTIONS ("Commercial Covenants") is made by La Cantera Development Company, a Delaware corporation qualified to do business in Texas ("Declarant"), as of the date set forth on the signature page hereof.

Declarant is the owner of the real property described in Exhibit "A," attached hereto and incorporated by reference. These Commercial Covenants impose upon the Commercial Properties (as defined in Article I) mutually beneficial restrictions under a general plan of improvement for the benefit of the owners of each portion of the Commercial Properties and establish a flexible and reasonable procedure for the overall development, administration, maintenance and preservation of the Commercial Properties as a part of the La Cantera Community (as defined in Article I).

Declarant hereby declares that all of the property described in Exhibit "A" and any additional property subjected to these Commercial Covenants by Supplemental Declaration (as defined in Article I) shall be held, sold, and conveyed subject to the following easements, restrictions, covenants, and conditions which shall run with the title to the real property subjected to these Commercial Covenants. These Commercial Covenants shall be binding on and shall inure to the benefit of all parties having any right, title, or interest in any portion of the Commercial Properties, their heirs, successors, successors-in-title, and assigns.

## Article I
## DEFINITIONS

The terms used in these Commercial Covenants shall generally be given their natural, commonly accepted definitions except as otherwise specified. Capitalized terms shall be defined as set forth below.

1.1. "Advisory Committee": The committee comprised of Commercial Owners as more particularly described in Section 2.3.

1.2. "Area of Common Responsibility": All real and personal property owned and/or maintained by the Community Organization pursuant to the Master Covenants for the benefit of the property owners in the La Cantera Community.

1.3. "Board of Directors" or "Board": The body responsible for administration of the Community Organization, selected as provided in the By-Laws and serving the same role as the board of directors under Texas corporate law.

VOL 6 7 0 1 PG0 8 8 1

1.4.    "By-Laws": The By-Laws of La Cantera Community Organization, as they may be amended as provided for therein.

1.5.    "Commercial Owner": One or more Persons who hold the record title to any Commercial Parcel, but excluding in all cases any party holding an interest merely as security for the performance of an obligation.

1.6.    "Commercial Parcel": A portion of the Commercial Properties, whether improved or unimproved, which may be independently owned and conveyed and which is intended for development, use and occupancy for purposes consistent with these Commercial Covenants, any other applicable covenants, and applicable zoning. The term shall refer to the land, if any, which is part of the Commercial Parcel as well as any improvements thereon. The term shall not include the Area of Common Responsibility. If any Commercial Parcel is subdivided or resubdivided, whether by plat or deed, each such subdivision shall be considered a Commercial Parcel hereunder.

1.7.    "Commercial Properties": The real property described in Exhibit "A," together with such additional property as is subjected to these Commercial Covenants in accordance with Article IX.

1.8.    "Community Organization": La Cantera Community Organization, a Texas non-profit corporation, its successors and assigns.

1.9.    "Community-Wide Standard": The standard of conduct, maintenance, or other activity generally prevailing throughout the La Cantera Community, including the Commercial Properties. Such standard may be more specifically determined by the Declarant, the Community Organization or the Advisory Committee, and may evolve over time as development progresses.

1.10.    "Declarant": La Cantera Development Company, a Delaware corporation qualified to do business in Texas, or any successor, successor-in-title or assign who takes title to any portion of the property described in Exhibits "A" or "B" and is designated as the Declarant in a recorded instrument executed by the immediately preceding Declarant; provided, there shall be no more than one Declarant at any time.

1.11.    "Design Guidelines": The design and development guidelines and architectural review procedures adopted by the Declarant pursuant to Article VII and applicable to all Commercial Parcels within the Commercial Properties, as they may be modified.

1.12.    "Governing Documents": The Master Covenants, these Commercial Covenants, any Supplemental Declaration, the By-Laws, the Articles of Incorporation of La Cantera Community Organization, Inc., the Design Guidelines, and the Use Restrictions and Rules, or any of the above, as each may be amended from time to time.

1.13.    "La Cantera Community": All of that real property which is subject to the

VOL 6701 PG0882

Master Covenants.

1.14.  "Master Covenants: Those certain La Cantera Master Covenants and Easements created by the Declarant and recorded in the Public Records, as it may be amended from time to time. The Master Covenants obligate all property owners in the La Cantera Community to share in the cost of administering the affairs of the La Cantera Community and of owning, operating, and maintaining certain property and facilities that directly or indirectly benefit such property owners.

1.15.  "Person": A natural person, a corporation, a partnership, a trustee, limited liability company, a reciprocal interinsurance exchange, an unincorporated association, or any other legal entity.

1.16.  "Public Records": The Office of the County Clerk of Bexar County, Texas, or such other place as is designated as the official location for recording of deeds and similar documents affecting title to real estate.

1.17.  "Supplemental Declaration": An instrument filed in the Public Records which subjects additional property to these Commercial Covenants and/or imposes, expressly or by reference, additional restrictions and obligations on the land described in such instrument.

1.18.  "Use Restrictions and Rules": Those use restrictions and rules affecting the Commercial Properties, which are set forth on Exhibit "C," as they may be adopted, modified and repealed in accordance with Article VI.

## Article II
## LA CANTERA COMMUNITY

2.1.  Organization of the La Cantera Community.  The Declarant has established a general plan of development for all of the La Cantera Community, and in furtherance of such development plan, has subjected all of the real property comprising the La Cantera Community to the Master Covenants.  The Commercial Properties, while subject to the Master Covenants, also are separately organized and subject to these Commercial Covenants.

2.2.  Function of Community Organization.  Subject to Section 2.3 below, the Community Organization is the entity responsible for administering the affairs of the La Cantera Community, in accordance with its By-Laws and the Master Covenants.  Subject to Section 2.3, the Community Organization shall be responsible for administering and enforcing these Commercial Covenants and such reasonable rules regulating use of the Commercial Properties as may be adopted. The Community Organization also may perform other tasks on behalf of the Commercial Properties, as it deems, from time to time in its business judgment, to be in the best interest of the La Cantera Community.

VOL 6701 PG0883

2.3.    <u>Advisory Committee</u>. Within one year of the recording of these Commercial Covenants, the Declarant shall appoint an Advisory Committee comprised of Commercial Owners which shall be responsible for communicating to the Community Organization recommendations, suggestions or concerns of the Commercial Owners. In the alternative, and in its discretion, the Declarant may provide for the election of the Advisory Committee by the Commercial Owners. For so long as the Declarant owns any property described in Exhibits "A" or "B," or until such earlier time as the Declarant assigns it additional rights, the Advisory Committee shall be without authority to bind the Community Organization on any matter, but shall serve in an advisory capacity only. Until such time, the Community Organization may delegate to the Advisory Committee such authority as to the Commercial Properties as it deems appropriate in the interest of the La Cantera Community.

On or before the date that Declarant no longer owns any portion of the real property described in Exhibits "A" or "B," the Advisory Committee shall be incorporated by Declarant. At the time of such incorporation, or at such later date as specifically designated by Declarant (but, in any event, on or before the date that Declarant no longer owns any portion of the real property described on Exhibit "A" or "B") and except as may otherwise be specifically provided herein, the Advisory Committee shall assume the authority for administering these Commercial Covenants. At such time, any rights of the Community Organization under these Commercial Covenants shall be assigned to and assumed by the Advisory Committee. Thereafter, the Advisory Committee shall be the only body responsible for the administration and enforcement of these Commercial Covenants (subject to any retained rights of the Declarant) and any reference in this document or the exhibits attached hereto to the Community Organization or the Board (to the extent such reference is as to authority relates to Commercial Properties as opposed to authority under the Master Covenants) shall be construed to be a reference to the Advisory Committee. The by-laws governing the incorporated Advisory Committee shall set forth the method by which the Commercial Owners shall elect the members of the Advisory Committee.

**EACH OWNER OF A COMMERCIAL PARCEL ACKNOWLEDGES AND AGREES THAT THE ADVISORY COMMITTEE SHALL ASSUME THE AUTHORITY OF THE COMMUNITY ORGANIZATION AS SPECIFIED ABOVE AND THAT EACH SUCH OWNER SHALL BE SUBJECT TO THE AUTHORITY OF THE INCORPORATED ADVISORY COMMITTEE AS GRANTED HEREIN AND IN THE BY-LAWS GOVERNING THE ADVISORY COMMITTEE. NOTWITHSTANDING SUCH TRANSFER OF AUTHORITY WITH RESPECT TO THESE COMMERCIAL COVENANTS, EACH COMMERCIAL PARCEL WILL REMAIN SUBJECT TO THE MASTER COVENANTS AND THE AUTHORITY OF THE COMMUNITY ORGANIZATION AS SET FORTH THEREIN.**

### Article III
### <u>RIGHTS AND OBLIGATIONS OF THE COMMUNITY ORGANIZATION</u>

3.1.    <u>Enforcement</u>. The Community Organization may impose sanctions, including monetary fines, for violations of these Commercial Covenants in accordance with procedures set forth

-4-

in its By-Laws.  In addition, in accordance with its By-Laws, the Community Organization may exercise self-help to cure violations, and may suspend any services it provides to any Commercial Owner who is more than 30 days delinquent in paying any assessment or other charge due the Community Organization.  All remedies set forth in the Governing Documents shall be cumulative of any remedies available at law or in equity.  In any action to enforce the provisions of the Governing Documents, the prevailing party shall be entitled to recover all costs, including, without limitation, attorneys' fees and court costs, reasonably incurred in such action.

Under no condition shall the Community Organization be obligated to take action to enforce any covenant, restriction or rule which it reasonably determines is, or is likely to be construed as, inconsistent with applicable law.  Furthermore, if the Board reasonably determines that the Community Organization's position is not strong enough to justify taking enforcement action or that it is not in the best interest of the Community Organization to take enforcement action, the Community Organization shall not be obligated to take such action.  Any such determination shall not be construed as a waiver of the right to enforce such provision under other circumstances or estop the Community Organization from enforcing any other covenant, restriction or rule.

As set forth in Section 2.3, after the Declarant no longer owns any property described in Exhibits "A" or "B," or after such earlier time as the Declarant specifically assigns these enforcement rights to the Advisory Committee, the Advisory Committee shall be the only body with authority to enforce these Commercial Covenants.  Thereafter, any reference in this Section 3.1 to the Community Organization or the Board shall be construed to be a reference to the Advisory Committee.

**3.2.    INDEMNIFICATION.  WITH RESPECT TO THOSE ACTIONS DESCRIBED IN THIS SECTION 3.2 , AND SUBJECT TO TEXAS LAW, THE  COMMUNITY ORGANIZATION SHALL INDEMNIFY EVERY OFFICER, DIRECTOR, AND MEMBER OF ANY COMMITTEE ESTABLISHED PURSUANT TO THESE COMMERCIAL COVENANTS, INCLUDING MEMBERS OF THE ADVISORY COMMITTEE AND THE ARCHITECTURAL REVIEW COMMITTEE (AS DEFINED IN ARTICLE VII), AGAINST ALL DAMAGES AND EXPENSES, INCLUDING ATTORNEYS' FEES, REASONABLY INCURRED IN CONNECTION WITH ANY ACTION, SUIT, OR OTHER PROCEEDING (INCLUDING SETTLEMENT OF ANY SUIT OR PROCEEDING, IF APPROVED BY THE BOARD AT THE TIME OF SUCH SETTLEMENT) TO WHICH HE OR SHE MAY BE A PARTY BY REASON OF BEING OR HAVING BEEN AN OFFICER, DIRECTOR, OR COMMITTEE MEMBER.**

**THE OFFICERS, DIRECTORS, AND COMMITTEE MEMBERS SHALL NOT BE LIABLE FOR ANY MISTAKE OF JUDGMENT, NEGLIGENT OR OTHERWISE, EXCEPT FOR THEIR OWN INDIVIDUAL WILLFUL MISFEASANCE, MALFEASANCE, MISCONDUCT, OR BAD FAITH.  THE OFFICERS AND DIRECTORS SHALL HAVE NO PERSONAL LIABILITY WITH RESPECT TO ANY CONTRACT OR OTHER COMMITMENT MADE OR ACTION TAKEN, IN GOOD FAITH, ON BEHALF OF THE COMMUNITY ORGANIZATION.  THE  COMMUNITY ORGANIZATION SHALL INDEMNIFY AND FOREVER HOLD EACH SUCH OFFICER, DIRECTOR AND COMMITTEE MEMBER**

HARMLESS FROM ANY AND ALL LIABILITY TO OTHERS ON ACCOUNT OF ANY SUCH CONTRACT, COMMITMENT OR ACTION.  THIS RIGHT TO INDEMNIFICATION SHALL NOT BE EXCLUSIVE OF ANY OTHER RIGHTS TO WHICH ANY PRESENT OR FORMER OFFICER, DIRECTOR, OR COMMITTEE MEMBER MAY BE ENTITLED.

THE FOREGOING RELEASE AND INDEMNITIES SET FORTH IN THIS PARAGRAPH 3.2 ARE INTENDED TO RELEASE AND INDEMNIFY THE OFFICERS, DIRECTORS AND COMMITTEE MEMBERS FROM AND AGAINST THEIR OWN SIMPLE NEGLIGENCE.

3.3.   Security.  The Community Organization may, but shall not be obligated to, maintain or support certain activities within the Commercial Properties designed to make the Commercial Properties safer than they otherwise might be.  NEITHER THE COMMUNITY ORGANIZATION, THE ADVISORY COMMITTEE, THE DECLARANT, NOR ANY SUCCESSOR DECLARANT SHALL IN ANY WAY BE CONSIDERED INSURERS OR GUARANTORS OF SECURITY OR SAFETY WITHIN THE COMMERCIAL PROPERTIES OR THE LA CANTERA COMMUNITY, NOR SHALL ANY OF THEM BE HELD LIABLE FOR ANY LOSS OR DAMAGE BY REASON OF FAILURE TO PROVIDE ADEQUATE SECURITY OR INEFFECTIVENESS OF SECURITY OR SAFETY MEASURES UNDERTAKEN.  NO REPRESENTATION OR WARRANTY IS MADE THAT ANY SAFETY MEASURE OR SECURITY SYSTEM CAN NOT BE COMPROMISED OR CIRCUMVENTED, NOR THAT ANY SUCH SYSTEMS OR MEASURES UNDERTAKEN WILL IN ALL CASES PREVENT LOSS OR PROVIDE THE DETECTION OR PROTECTION FOR WHICH IT IS DESIGNED OR INTENDED.  EACH COMMERCIAL OWNER ACKNOWLEDGES, UNDERSTANDS AND COVENANTS TO INFORM ITS TENANTS THAT THE COMMUNITY ORGANIZATION, ITS BOARD OF DIRECTORS AND COMMITTEES, THE ADVISORY COMMITTEE, THE DECLARANT, AND ANY SUCCESSOR DECLARANT ARE NOT INSURERS AND THAT EACH PERSON USING THE COMMERCIAL PROPERTIES ASSUMES ALL RISKS FOR LOSS OR DAMAGE TO PERSONS, TO COMMERCIAL PARCELS AND TO THE CONTENTS OF COMMERCIAL PARCELS RESULTING FROM ACTS OF THIRD PARTIES.

3.4.   Right of Entry.  The Community Organization shall have the right, but not the obligation, to enter upon any Commercial Parcel for emergency, security, safety, and loss control reasons, and to inspect for the purpose of ensuring compliance with the Governing Documents.  This right may be exercised by any member of the Board, any officer, manager, agent or employee of the Community Organization acting with the permission of the Board, and all police, fire and similar emergency personnel in the performance of their duties.  This right of entry shall include the right of the Community Organization to enter upon a Commercial Parcel to perform maintenance or cure any condition which may increase the possibility of a fire or other hazard, in the event that the Commercial Owner fails or refuses to perform such maintenance or cure such condition within a reasonable time after request by the Board.

Except to avoid an imminent threat of personal or bodily injury or property damage, entry onto any portion of a Commercial Parcel not generally open to the public shall only be authorized during reasonable hours and after receipt of the Commercial Owner's or occupant's consent, which consent shall not unreasonably be withheld.

### Article IV
### MAINTENANCE

4.1.  <u>Owner's Responsibility</u>.  Each Commercial Owner shall maintain its Commercial Parcel including all structures, parking areas and other improvements comprising the Commercial Parcel, and any landscaping within any adjacent street right-of-way up to the curb of such street, in a manner consistent with the Community-Wide Standard and all applicable covenants.

Each Commercial Owner covenants and agrees that in the event of damage to or destruction of structures on or comprising its Commercial Parcel, the Commercial Owner shall proceed promptly to repair or to reconstruct in a manner consistent with the original construction or such other plans and specifications as are approved in accordance with Article VII of these Commercial Covenants.  Alternatively, the Commercial Owner shall promptly clear the Commercial Parcel of all debris and ruins and maintain the Commercial Parcel in a neat and attractive, landscaped condition consistent with the Community-Wide Standard.  The Commercial Owner shall pay any costs which are not covered by insurance proceeds.

IF ANY COMMERCIAL OWNER FAILS PROPERLY TO PERFORM ITS MAINTENANCE RESPONSIBILITY HEREUNDER, THE COMMUNITY ORGANIZATION MAY PERFORM IT AND ASSESS ALL COSTS INCURRED AGAINST THE COMMERCIAL PARCEL AND THE COMMERCIAL OWNER THEREOF; PROVIDED, HOWEVER, THE OWNER SHALL BE AFFORDED NOTICE AND A REASONABLE OPPORTUNITY TO CURE THE PROBLEM PRIOR TO ENTRY, EXCEPT WHEN ENTRY IS REQUIRED DUE TO AN EMERGENCY OR THE PROBLEM POSES AN IMMEDIATE THREAT TO THE HEALTH, WELFARE, OR SAFETY OF ANY PERSON IN THE COMMERCIAL PROPERTIES OR OTHERWISE WITHIN THE LA CANTERA COMMUNITY.  A COMMERCIAL OWNER MAY DEMONSTRATE ITS INTENT TO CURE BY TAKING IMMEDIATE CORRECTIVE ACTION AND DILIGENTLY AND WITHOUT INTERRUPTION PROSECUTING SUCH ACTION TO COMPLETION.  THE SUFFICIENCY OF THE COMMERCIAL OWNER'S EFFORTS TO CURE SHALL BE DETERMINED IN THE REASONABLE DISCRETION OF THE COMMUNITY ORGANIZATION.

4.2.  <u>Standard of Performance</u>.  Maintenance, as such term is used in this Article, shall include, without limitation, repair and replacement as needed, as well as such other duties, which may include irrigation, as determined necessary or appropriate by the Board to satisfy the Community-Wide Standard.  All maintenance and irrigation shall be performed in a manner consistent with the Community-Wide Standard and all applicable covenants and restrictions.

THE OBLIGATIONS FOR MAINTENANCE HEREUNDER DO NOT CONFER ANY OBLIGATIONS ON ANY PERSON WITH RESPECT TO PROPERTY IT DOES NOT OWN. NOTWITHSTANDING ANY MAINTENANCE AND ENFORCEMENT RIGHTS ESTABLISHED IN THESE COMMERCIAL COVENANTS, NEITHER THE COMMUNITY ORGANIZATION, THE ADVISORY COMMITTEE, NOR ANY COMMERCIAL OWNER SHALL BE LIABLE FOR PROPERTY DAMAGE OR PERSONAL INJURY OCCURRING ON, OR ARISING OUT OF THE CONDITION OF, PROPERTY WHICH IT DOES NOT OWN UNLESS AND ONLY TO THE EXTENT THAT IT HAS BEEN NEGLIGENT IN THE PERFORMANCE OF ITS MAINTENANCE RESPONSIBILITIES, IF ANY.

## Article V
## INSURANCE OBLIGATIONS

5.1.    <u>Community Organization Insurance</u>.  The Community Organization, acting through its Board or its duly authorized agent, shall obtain and continue in effect insurance covering the Area of Common Responsibility and the Community Organization.  The types and amounts of such insurance shall be as set forth in the By-Laws and as otherwise deemed reasonably necessary and affordable in the exercise of the Board's business judgment.  Premiums and other risk management charges for all such insurance of the Community Organization shall be a common expense of all owners within the La Cantera Community, including the Commercial Owners, in accordance with the Master Covenants.

In addition, the Community Organization or, upon its incorporation, the Advisory Committee may, in the exercise of its business judgment, but shall not be obligated to, obtain and continue in effect the same or similar types and amounts of insurance solely for the benefit of the Commercial Properties.  The costs thereof shall be charged specifically to the Commercial Owners as an assessment pursuant to Article VIII hereof.

5.2.    <u>Commercial Owner's Insurance</u>.  Each Commercial Owner shall obtain and continue in effect commercial general liability insurance insuring against damage or injury caused by the negligence of the Commercial Owner or any of its employees, agents, or contractors while acting on its behalf.  All such policies shall name the Declarant and the Community Organization, and the Advisory Committee as additional insureds and shall provide coverage (including primary and any umbrella coverage) of at least $2,000,000.00 per occurrence with respect to bodily injury, personal injury, and property damage.  In addition, unless otherwise approved by the Community Organization, each Commercial Owner shall obtain and continue in effect workers compensation insurance in statutory requirements and employer's liability insurance with limits of at least $1,000,000.00 per occurrence and shall provide a waiver of subrogation under the policy with respect to claims against the Declarant, the Community Organization, and the Advisory Committee.  Notwithstanding the above, the minimum coverage limits may be increased from time to time in the discretion of the Community Organization if deemed necessary in light of inflationary increases or other relevant factors.

VOL 6701 PG0888

The above insurance requirements may be waived for Commercial Owners with sufficient self insurance in the discretion of the Community Organization. The Community Organization may increase the minimum insurance limits in its discretion from time to time.

## Article VI
## USE RESTRICTIONS AND RULES

6.1.   <u>Plan of Development; Applicability; Effect</u>. Declarant has established a general plan of development for the Commercial Properties in order to enhance the collective interests of all Commercial Owners, the aesthetics, environment, and vitality of and sense of community within the Commercial Properties, all subject to changes in circumstances, conditions, needs, and desires within the La Cantera Community. The Commercial Properties, as a part of the La Cantera Community, are subject to the land development, architectural, design and other provisions set forth in these Commercial Covenants which govern individual conduct and uses of and actions upon the Commercial Properties, all of which establish affirmative and negative covenants, easements, and restrictions which run with title to each of the Commercial Parcels.

The provisions of these Commercial Covenants shall apply to all Commercial Owners, tenants, guests and invitees of any Commercial Parcel. Any lease on any Commercial Parcel shall provide or shall be deemed to provide that the lessees shall be bound by the terms of the Governing Documents.

6.2.   <u>Authority to Promulgate Use Restrictions and Rules</u>. Initial Use Restrictions and Rules applicable to the Commercial Properties are attached as Exhibit "C" to these Commercial Covenants. Subject to the terms of this Article, the Use Restrictions and Rules may be modified in whole or in part, repealed or expanded as follows:

(a)   Subject to its duty to exercise business judgment, the Community Organization shall implement, administer and enforce the Use Restrictions and Rules and may modify, cancel, limit, create exceptions to, or expand the Use Restrictions and Rules in a manner which is consistent with the general plan of development for the Commercial Properties. Prior to any modification, cancellation, limitation, creation of exceptions to or expansion of the Use Restrictions and Rules, the Community Organization shall notify all Commercial Owners in writing of any such proposed action at least 10 days prior to the Board meeting at which such action is to be considered. Commercial Owners shall have a reasonable opportunity to be heard at a Board meeting prior to such action being taken.

(b)   The Commercial Owners may initiate and adopt modifications, limitations, exceptions to or expansions of the Use Restrictions and Rules upon the written consent of a majority of the Commercial Owners. All such consents must be delivered to the Community Organization within 30 days of delivery of the first consent. For so long as the Declarant owns any land described in Exhibits "A" or "B," the Community Organization shall inform the Declarant in

VOL 6701 PG0889

writing of any rule adopted by the Commercial Owners.  No rule adopted by the Commercial Owners shall take effect if it is disapproved by the Declarant within 30 days after written notice by the Community Organization of its adoption.

(c)     At least 30 days prior to any rule under this Section becoming effective, the Board shall send a copy of the new or amended rule to each Commercial Owner.  The Board shall provide one time, without cost, a copy of the Use Restriction and Rules to any requesting Commercial Owner.

(d)     Nothing in this Article shall authorize the Community Organization or the Commercial Owners to modify, repeal or expand the Design Guidelines. In the event of any inconsistencies between the Design Guidelines and the Use Restrictions and Rules, the Design Guidelines shall control.

6.3.     Owners' Acknowledgment.  ALL COMMERCIAL OWNERS AND THEIR TENANTS ARE GIVEN NOTICE THAT USE OF THEIR COMMERCIAL PARCELS IS LIMITED BY THE USE RESTRICTIONS AND RULES AND OTHER GOVERNANCE DOCUMENTS AS THEY MAY BE AMENDED, EXPANDED AND OTHERWISE MODIFIED HEREUNDER. EACH COMMERCIAL OWNER, BY ACCEPTANCE OF A DEED OR ENTERING INTO A RECORDED CONTRACT OF SALE, ACKNOWLEDGES AND AGREES THAT THE USE AND ENJOYMENT AND MARKETABILITY OF ITS PROPERTY MAY BE AFFECTED BY THIS PROVISION AND THAT THE USE RESTRICTIONS AND RULES MAY CHANGE FROM TIME TO TIME.

6.4.     Rights of Commercial Owners.  Except as may be specifically set forth in these Commercial Covenants (either initially or by amendment) or in Exhibit "C," no use restriction or rule may be adopted in violation of the following provisions:

(a)     Similar Treatment.  Similarly situated Commercial Owners and their tenants shall be treated similarly.

(b)     Speech.  The rights of Commercial Owners and their tenants to engage in political speech or otherwise to display political signs and symbols, including flags, in or on their Commercial Parcels shall not be abridged, except that the Community Organization may adopt time, place, and manner restrictions (including design criteria) with respect to such speech or displays.

(c)     Religious and Holiday Displays.  The rights of Commercial Owners to display religious and holiday signs, symbols, and decorations on their Commercial Parcels shall not be abridged, except that the Community Organization may adopt time, place, and manner restrictions (including design criteria) with respect to such displays.

(d)     Allocation of Burdens and Benefits.  The formula for allocating assessments as provided in the Master Covenants may be amended only as provided therein.

(e)     <u>Alienation</u>.  No use restriction or rule shall prohibit leasing or transfer of any Commercial Parcel or require consent of the Community Organization for leasing or transfer of any Commercial Parcel; provided, the Declarant shall not be prohibited from regulating the conveyances of any Commercial Parcel by contract.

(f)     <u>Rights to Develop</u>.  No rule or action shall impede Declarant's right to develop the Commercial Properties or any portion of the La Cantera Community.

(g)     <u>Abridging Existing Property Rights</u>.  If any rule would otherwise require Commercial Owners or tenants of Commercial Parcels to dispose of property which they were permitted to maintain in or on the Commercial Parcel prior to the effective date of such rule, such rule shall not apply to any such Commercial Owners or tenants without their written consent unless the rule was in effect at the time such Commercial Owners or tenants acquired their interest in the Commercial Parcel.

The foregoing limitations apply to new rules only; nothing herein shall invalidate rules set forth initially on Exhibit "C" nor be construed as a limitation on amendments to these Commercial Covenants.

## Article VII
## ARCHITECTURAL STANDARDS

7.1.    <u>General</u>.  No structure shall be placed, erected or installed upon any portion of the Commercial Properties and no improvements of any type (such activities being referred to in this Article as "Work") shall take place within the Commercial Properties except in compliance with this Article and the Design Guidelines promulgated pursuant to Section 7.3.

This Article shall not apply to the activities of the Declarant or the Community Organization.

This Article may not be amended without the written consent of the Declarant, so long as the Declarant owns any land described on Exhibits "A" and "B."

7.2.    <u>Architectural Review Committee</u>.

Each Commercial Owner agrees that no Work shall be commenced on any Commercial Parcel unless and until the plans for such Work are reviewed and approved by the Architectural Review Committee for the Commercial Properties ("ARC") pursuant to this Article.  The ARC shall consist of at least three but not more than seven Persons.  Unless it earlier determines in a written instrument recorded in the Public Records, the Declarant shall appoint and remove (at any time and for any reason upon written notice to the Board) all members of the ARC as long as it owns any property described on Exhibits "A" or "B."   After the Declarant's right to appoint the members of the ARC expires or is

-11-

assigned, the Advisory Committee shall appoint and remove the members of the ARC.

The members of the ARC may, but need not, include architects, engineers, professional landscapers, or similar professionals, whose compensation, if any, shall be established from time to time by the Declarant or the Advisory Committee, whichever appoints the ARC. Members of the ARC who are appointed by the Advisory Committee shall act in good faith and exercise proper business judgment in carrying out their responsibilities.

The Declarant, or the Advisory Committee when it appoints the members of the ARC, may establish and charge reasonable fees for the ARC's review of applications hereunder and may require such fees to be paid in full prior to review of any application. In addition, the ARC may retain architects, engineers or other professionals to assist in the review of any application and the Declarant or the Advisory Committee, as the case may be, may charge any fees incurred for such assistance to the applicant.

7.3.    <u>Guidelines and Procedures</u>.

(a)    <u>Design Guidelines</u>. The Design Guidelines set forth the aesthetic standards for architecture in the Commercial Properties. The Design Guidelines are not intended to, nor do they, establish standards for structural integrity or soundness of construction. The Declarant shall prepare initial Design Guidelines. The Design Guidelines may vary according to land use and from one Commercial Parcel to another depending upon the location, unique characteristics, and intended use of the Commercial Parcel. The Design Guidelines are intended to provide guidance to Commercial Owners regarding matters of particular concern to the Declarant in considering applications for architectural approval. The Design Guidelines are not the exclusive basis for decisions hereunder and compliance with the Design Guidelines shall not guarantee approval of any application for approval of proposed Work. The Design Guidelines, and any amendments thereto, shall comply with and be subject to the terms and conditions of these Commercial Covenants.

As long as the Declarant owns any property described on Exhibits "A" or "B," the Declarant shall have the right to amend the Design Guidelines from time to time in its sole discretion. Thereafter, or at such earlier time as the Declarant assigns it the rights, the Advisory Committee shall have the right to amend the Design Guidelines. The ARC may propose amendments to the Design Guidelines; however, no amendment proposed by the ARC shall be effective without prior notice to, and the written approval of, Declarant so long as the Declarant has any rights under this Section and, thereafter, the Advisory Committee. Amendments to the Design Guidelines shall not apply to require modifications to or removal of structures previously approved once the approved construction or modification has commenced. There shall be no limitation on the scope of amendments to the Design Guidelines.

Copies of the Design Guidelines shall be made available to Commercial Owners and their contractors or assigns who seek to engage in development or construction within the Commercial Properties. A reasonable fee may be charged for such copies to cover printing costs.

(b)    <u>Procedures</u>.  Prior to commencing any Work within the scope of Section 7.1, an application for approval of such work shall be submitted to the ARC, in such form as may be required by the Design Guidelines or the ARC.  The application shall include plans and specifications ("Plans") showing the site layout, structural design, exterior elevations, exterior materials and colors, signs, landscaping, drainage, lighting, irrigation, utility facilities layout and screening therefor, setbacks and other features of the proposed construction, as required by the Design Guidelines and as applicable. The ARC may require the submission of such additional information as it deems necessary to consider any application.

The ARC may consider (but shall not be restricted to consideration of) visual and environmental impact, ecological compatibility, natural platforms and finish grade elevation, harmony of external design with surrounding structures and environment, location in relation to surrounding structures and plant life, compliance with the general intent of the Design Guidelines, and architectural merit.  Decisions may be based on purely aesthetic considerations in the sole discretion of the ARC. Each Commercial Owner acknowledges that determinations as to such matters are purely subjective and opinions may vary as to the desirability and/or attractiveness of particular improvements.

A schedule and procedures outlining the specific Plans to be submitted at specific times shall be established by the ARC and set forth in the Design Guidelines.  The ARC shall, within 45 days after receipt of each submission of the Plans, or such longer period as it may reasonably establish, advise the party submitting the same, in writing, at an address specified by such party at the time of submission, of (i) the approval of Plans, subject to Declarant's veto rights set forth below or (ii) the disapproval of such Plans, specifying the segments or features of the Plans which are objectionable and suggestions, if any, for the curing of such objections.

In the event the ARC fails to advise the submitting party by written notice within the time set forth above of either the approval or disapproval of the Plans, approval shall be deemed granted, subject to the right of the Declarant to veto approvals by the ARC as set forth in this Section. However, no approval, whether expressly granted or deemed granted pursuant to the foregoing, shall be inconsistent with the Design Guidelines unless a variance has been granted in writing pursuant to Section 7.5.

Notice shall be deemed to have been given three business days after the time the envelope containing such notice, properly addressed, and postage prepaid, is deposited with the U. S. Postal Service, registered or certified mail, return receipt requested.  Personal delivery of such written notice shall, however, be sufficient and shall be deemed to have been given at the time of delivery.

For so long as Declarant owns any property described in Exhibits "A" or "B," within three business days after the ARC has approved any application relating to proposed Work, the ARC shall give written notice to the Declarant of such action, together with such other information as the Declarant may require.  The Declarant shall have 10 days after receipt of such notice to veto any such action, in its sole discretion, by written notice to the ARC and the applicant.

-13-

If construction does not commence on any Work for which approval has been granted within six months of such approval or such other period as may be specified in the notice of approval, such approval shall be deemed withdrawn, and it shall be necessary for the Owner to re-submit the Plans for reconsideration prior to commencing such Work. All Work shall be completed within two years of commencement or such other period as may be specified in the notice of approval, unless completion is delayed due to causes beyond the reasonable control of the Owner, as determined in the sole discretion of the ARC.

      7.4.   <u>No Waiver of Future Approvals</u>. Each Commercial Owner acknowledges that the Persons reviewing applications under this Article will change from time to time and that opinions on aesthetic matters, as well as interpretation and application of the Design Guidelines, may vary accordingly. In addition, each Commercial Owner acknowledges that it may not always be possible to identify objectionable features of proposed Work until the Work is completed, in which case it may be unreasonable to require changes to the improvements involved, but the ARC may refuse to approve similar proposals in the future. Approval of proposals, plans and specifications, or drawings for any Work done or proposed, or in connection with any matter requiring approval, shall not be deemed a waiver of the right to withhold approval as to any similar proposals, plans and specifications, drawings or other matters whatever subsequently or additionally submitted for approval.

      7.5.   <u>Variances</u>. The ARC may, but shall not be required to, authorize variances from compliance with any of the provisions of the Design Guidelines when circumstances such as topography, natural obstructions, hardship, or aesthetic or environmental considerations require, or when architectural merit warrants such variance, as the ARC may determine in its sole discretion. Such variances shall be granted only when, in the ARC's judgment, unique circumstances exist and no Owner shall have any right to demand or obtain a variance. No variance shall (a) be effective unless in writing, (b) be contrary to these Commercial Covenants, or (c) estop the ARC from denying a variance in other circumstances. Notwithstanding the above, for so long as the Declarant owns any property described in Exhibits "A" or "B," no variance shall be effective without the Declarant's written consent.

      7.6.   <u>Limitation of Liability</u>. The standards and procedures established by this Article are intended to provide a mechanism for maintaining and enhancing the overall aesthetics of the Commercial Properties but shall not create any duty to any Person. NEITHER THE DECLARANT, THE COMMUNITY ORGANIZATION, THE ADVISORY COMMITTEE, NOR THE ARC SHALL BEAR ANY RESPONSIBILITY FOR ENSURING THE STRUCTURAL INTEGRITY OR SOUNDNESS OF APPROVED CONSTRUCTION OR MODIFICATIONS, NOR FOR ENSURING COMPLIANCE WITH BUILDING CODES AND OTHER GOVERNMENTAL REQUIREMENTS, NOR FOR ENSURING THAT ALL STRUCTURES AND IMPROVEMENTS CONSTRUCTED WITHIN THE COMMERCIAL PROPERTIES ARE OF COMPARABLE QUALITY, VALUE, OR SIZE, OR OF SIMILAR DESIGN. NEITHER THE DECLARANT, THE COMMUNITY ORGANIZATION, THE ADVISORY COMMITTEE, THE ARC, NOR ANY MEMBER OF ANY OF THE FOREGOING SHALL BE HELD LIABLE FOR SOIL CONDITIONS, DRAINAGE PROBLEMS OR OTHER GENERAL SITE WORK, NOR FOR

VOL 6 701 PG 0894

DEFECTS IN ANY PLANS OR SPECIFICATIONS SUBMITTED, REVISED OR APPROVED HEREUNDER, NOR FOR ANY STRUCTURAL OR OTHER DEFECTS IN WORK DONE ACCORDING TO APPROVED PLANS, NOR FOR ANY INJURY, DAMAGES, OR LOSS ARISING OUT OF THE MANNER, DESIGN OR QUALITY OF APPROVED CONSTRUCTION ON OR MODIFICATIONS TO ANY COMMERCIAL PARCEL.

7.7.    Enforcement.  Any Work performed in violation of this Article or in a manner inconsistent with the approved Plans shall be deemed to be nonconforming.  Upon written request from the Declarant or the Community Organization, or the Advisory Committee, after the Advisory Committee appoints the members of the ARC, Commercial Owners shall, at their own cost and expense, cure such nonconforming condition, or remove any nonconforming structure or improvement and restore the property to substantially the same condition as existed prior to the nonconforming Work.  Should a Commercial Owner fail to cure or remove and restore as required, the Declarant, the Community Organization or their designees shall have the right to enter the property, remove the violation and restore the property to substantially the same condition as previously existed and any such action shall not be deemed a trespass.  Upon demand, the Commercial Owner shall reimburse all costs incurred by any of the foregoing in exercising its rights under this Section.  Any costs incurred in taking enforcement action under this Section, together with interest at the maximum rate then allowed by law, may be asserted against the affected Commercial Parcel.

The Declarant and the Community Organization, acting separately or jointly may preclude any contractor, subcontractor, agent, employee or other invitee of a Commercial Owner who fails to comply with the terms and provisions of this Article and the Design Guidelines from continuing or performing any further activities in the Commercial Properties, subject to the notice and hearing procedures contained in the By-Laws.  NEITHER THE DECLARANT, THE COMMUNITY ORGANIZATION, THE ADVISORY COMMITTEE, NOR THEIR OFFICERS, DIRECTORS OR AGENTS SHALL BE HELD LIABLE TO ANY PERSON FOR EXERCISING THE RIGHTS GRANTED BY THIS PARAGRAPH.

IN ADDITION TO THE FOREGOING, THE COMMUNITY ORGANIZATION AND THE DECLARANT, AND THE ADVISORY COMMITTEE, AFTER THE ADVISORY COMMITTEE APPOINTS THE MEMBERS OF THE ARC, SHALL HAVE THE AUTHORITY AND STANDING TO PURSUE ALL LEGAL AND EQUITABLE REMEDIES AVAILABLE TO ENFORCE THE PROVISIONS OF THIS ARTICLE AND THE DECISIONS OF THE REVIEWING ENTITIES UNDER THIS ARTICLE.

VOL 6701 PG 0895

## Article VIII
## ASSESSMENTS

Each Commercial Owner is obligated under the Master Covenants to pay assessments to the Community Organization for costs incurred in the administration, operation and maintenance of the La Cantera Community.  In addition, the Community Organization is authorized further to levy assessments against all or any of the Commercial Owners for expenses incurred or anticipated to be

incurred by the Community Organization in performing its responsibilities and exercising its rights and powers under these Commercial Covenants. The Community Organization shall prepare a budget of such Commercial Properties expenses at least 60 days before the beginning of each fiscal year ("Commercial Budget"). The Board shall send a copy of the Commercial Budget and notice of the amount of the assessment for the following year to each Commercial Owner at least 30 days prior to the beginning of the fiscal year for which it is to be effective. If the Board fails for any reason to determine the Commercial Budget for any year, then until such time as a Commercial Budget is adopted, the Commercial Budget in effect for the immediately preceding year, increased by five percent (5%), shall continue for the current year.

In addition to other assessments authorized in the Master Covenants, the Board may levy special assessments against the Commercial Owners from time to time to cover unbudgeted expenses or expenses in excess of those budgeted relating to the Commercial Properties. Special assessments shall be due at the time they are levied; provided, they may be made payable in such manner and at such times as determined by the Board, and may be payable in installments extending beyond the fiscal year in which such assessment is approved.

The Community Organization also shall have the power to levy specific assessments against a particular Commercial Parcel or Parcels to cover costs incurred in bringing such Commercial Parcel(s) into compliance with the terms of the Governing Documents, or costs incurred as a consequence of the conduct of the Commercial Owner or occupants of a Commercial Parcel, their agents, contractors, employees, licensees, invitees, or guests; provided, the Board shall give the Commercial Owner prior written notice and an opportunity for a hearing prior to levying any specific assessment.

With respect to all assessments levied against the Commercial Owners hereunder, the Community Organization shall have all of the rights and powers, including lien rights, set forth in Article IV of the Master Covenants, which rights and powers, as written, are incorporated as if specifically set forth herein. In determining the amount of assessments, other than specific assessments, levied solely against the Commercial Owners, the amount of assessment due from each Commercial Owner shall be determined in accordance with the method set forth in Section 4.4 of the Master Covenants; provided, however, "Cumulative Value," as referred to therein, shall be the cumulative value of the Commercial Parcels only.

THE ADVISORY COMMITTEE SHALL ASSUME THE POWERS, RIGHTS AND AUTHORITY OF THE COMMUNITY ORGANIZATION WITH RESPECT TO THE COMMERCIAL BUDGET UNDER THIS ARTICLE IN ACCORDANCE WITH SECTION 2.3 OF THESE COMMERCIAL COVENANTS. EACH OWNER OF A COMMERCIAL PARCEL ACKNOWLEDGES AND AGREES THAT THE ADVISORY COMMITTEE SHALL ASSUME SUCH RIGHTS, INCLUDING BUT NOT LIMITED TO, LIEN RIGHTS, UPON SUCH FUTURE DATE. NOTWITHSTANDING THE ASSUMPTION OF AUTHORITY BY THE ADVISORY COMMITTEE WITH RESPECT TO THE COMMERCIAL BUDGET, THE COMMUNITY ORGANIZATION SHALL RETAIN ALL RIGHTS AND AUTHORITY FOR

-16-

**ASSESSMENTS RELATING TO THE LA CANTERA COMMUNITY UNDER THE MASTER COVENANTS.**

For so long as the Declarant owns any Commercial Parcels, the Declarant may annually elect either to pay assessments as provided in this Article, whether general, special, or specific, on all of its unsold Commercial Parcels or to pay the difference between the amount of assessments levied on all other Commercial Parcels subject to these Commercial Covenants and the amount of actual expenditures on behalf of the Commercial Properties by the Community Organization or the Advisory Committee, as appropriate, during the fiscal year. Regardless of the Declarant's election, the Declarant's Commercial Parcels shall be considered in computing the amount of the general assessment as provided above, and the Community Organization shall have a lien against all Commercial Parcels owned by the Declarant to secure the Declarant's obligations under this Section, which lien shall have the same attributes and shall be enforceable in the same manner as the Community Organization's lien against each other Commercial Parcel.

Unless the Declarant otherwise notifies the Board, the Declarant shall be deemed to have elected to continue paying on the same basis as during the immediately preceding fiscal year. The Declarant's obligations hereunder may be satisfied in the form of cash or by "in kind" contributions of services or materials, or by a combination of these. The reasonable valuation of any "in kind" contributions shall be fixed by the Declarant.

## Article IX
### ANNEXATION AND WITHDRAWAL OF PROPERTY

9.1.   **Annexation Without Approval of Membership.** Until all property described on Exhibit "B" has been subjected to these Commercial Covenants or 50 years after the recording of these Commercial Covenants, whichever is earlier, Declarant may unilaterally subject to the provisions of these Commercial Covenants all or any portion of the real property described on Exhibit "B." Declarant may transfer or assign this right to annex property, in whole or in part, provided that the transferee or assignee is the owner of at least a portion of the real property described in Exhibits "A" or "B" and that such transfer is memorialized in a written, recorded instrument executed by Declarant.

Such annexation shall be accomplished by filing in the Public Records a Supplemental Declaration describing the property to be annexed. Such Supplemental Declaration shall not require the consent of the Commercial Owners, but shall require the consent of the owner of such property to be annexed. Any such annexation shall be effective upon the filing for record of such Supplemental Declaration unless otherwise provided therein.

Nothing in these Commercial Covenants shall be construed to require Declarant or any successor to annex or develop any of the property set forth in Exhibit "B" in any manner whatsoever.

9.2.   **Annexation With Approval of Commercial Owners.** A majority of Commercial

VOL 9701 PG0897

Owners may annex real property to the provisions of these Commercial Covenants with the consent of the owner of such property, and the consent of the Declarant, so long as Declarant owns property subject to these Commercial Covenants or which may become subject to these Commercial Covenants in accordance with Section 9.1; provided, no property may be annexed to the provisions of these Commercial Covenants unless and until such property is first made subject to the Master Covenants.

Such annexation shall be accomplished by filing a Supplemental Declaration and the Commercial Owners' and Declarant's written consents in the Public Records describing the property being annexed. Any such annexation shall be effective upon filing unless otherwise provided therein.

9.3.　Withdrawal of Property. Declarant reserves the right to amend these Commercial Covenants unilaterally, so long as it has a right to annex additional property pursuant to Section 9.1, for the purpose of removing any portion of the Commercial Properties from the coverage of these Commercial Covenants, provided such withdrawal is not unequivocally contrary to the overall, uniform scheme of development for the Commercial Properties and the La Cantera Community. Such amendment shall not require the consent of any Person other than the Commercial Owner of the property to be withdrawn, if not the Declarant.

9.4.　Additional Covenants and Easements. The Declarant may subject any portion of the Commercial Properties to additional covenants and easements. Such additional covenants and easements shall be set forth in a Supplemental Declaration filed either concurrently with or after the annexation of the subject property or in the deed to convey such property, and shall require the written consent of the owner(s) of such property, if other than the Declarant. Any Supplemental Declaration annexing additional property may supplement, create exceptions to, or otherwise modify the terms of these Commercial Covenants as it applies to such additional property in order to reflect the different character and intended use of such property.

9.5.　Amendment. This Article shall not be amended without the prior written consent of Declarant, so long as the Declarant owns any property described in Exhibits "A" or "B."

## Article X
## DECLARANT'S RIGHTS

10.1.　Transfer of Declarant Rights. Any or all of the special rights and obligations of the Declarant reserved in these Commercial Covenants may be transferred in whole or in part to other Persons, provided that the transfer shall not reduce an obligation nor enlarge a right beyond that contained in these Commercial Covenants or the By-Laws, and provided further, no such transfer shall be effective unless it is in a written instrument signed by the Declarant and duly recorded in the Public Records. Any such transfer may be made effective only for so long as the transferee is the owner of any property described in Exhibits "A" or "B"; provided, after such time, the rights transferred shall revert to the transferor of such rights for so long as it owns any property described in Exhibits "A" or "B." The foregoing sentence shall not preclude Declarant from permitting other Persons to exercise,

on a one time or limited basis, any right reserved to Declarant in these Commercial Covenants where Declarant does not intend to transfer such right in its entirety. In such case it shall not be a requirement that the written assignment be recorded unless deemed necessary to evidence Declarant's intentions.

10.2.  Approval of Additional Covenants.  No Person shall record any declaration of covenants, conditions and restrictions, or declaration of condominium or similar instrument affecting any portion of the Commercial Properties without Declarant's review and written consent.  Any attempted recordation without such consent shall result in such instrument being voidable and of no force and effect unless subsequently approved by recorded consent signed by the Declarant.

10.3.  Amendment.  This Article may not be amended without the written consent of the Declarant so long as Declarant, or the assignee of any Declarant rights, owns any property described in Exhibits "A" or "B."

## Article XI
## GENERAL PROVISIONS

11.1.  Duration.

(a)  Unless terminated as provided below, these Commercial Covenants shall have perpetual duration.  If Texas law hereafter limits the period during which covenants may run with the land, then to the extent consistent with such law, these Commercial Covenants shall automatically be extended at the expiration of such period for successive periods of 20 years each, unless terminated as provided below.  Notwithstanding the above, if any of the covenants, conditions, restrictions, or other provisions of these Commercial Covenants shall be unlawful, void, or voidable for violation of the rule against perpetuities, then such provisions shall continue only until 21 years after the death of the last survivor of the now living descendants of Elizabeth II, Queen of England.

(b)  Unless otherwise required by Texas law these Commercial Covenants may not be terminated within the first 20 years after the date of recording except by an instrument signed by Commercial Owners of 75% of the Commercial Parcels and by the Declarant, if the Declarant or any affiliates of Declarant own any land described in Exhibits "A" or "B." After the twentieth anniversary of the date of recording, termination may be accomplished by an instrument signed by Commercial Owners of at least 60% of the total Commercial Parcels and signed by the Declarant, if the Declarant, or any affiliates of Declarant, owns any portion of the Commercial Properties.  Any such instrument shall set forth the intent to terminate these Commercial Covenants and shall be recorded in the Public Records.  Nothing in this Section shall be construed to permit termination of any easement created in these Commercial Covenants without the consent of the holder of such easement.

11.2.  Amendment.

(a)  By Declarant.  Until the conveyance of all property described in

-19-

Exhibit "A" to Persons other than the Declarant or affiliates of the Declarant, the Declarant may unilaterally amend these Commercial Covenants for any purpose. Thereafter, Declarant may unilaterally amend these Commercial Covenants at any time and from time to time if such amendment is necessary (i) to bring any provision hereof into compliance with any applicable governmental statute, rule or regulation or judicial determination which is in conflict therewith; (ii) to enable any reputable title insurance company to issue title insurance coverage with respect to any portion of the property within the La Cantera Community; (iii) to satisfy the requirements of any governmental agency. However, any such amendment shall not adversely affect the title to any Commercial Parcel unless the Commercial Owner shall consent thereto in writing. So long as the Declarant or its affiliates own property described in Exhibits "A" or "B" for development as part of the Commercial Properties, it may unilaterally amend these Commercial Covenants for any other purpose, provided that the amendment has no material adverse effect upon any right of any Commercial Owner.

(b)    <u>By the Community Organization</u>.  Until such time as the Advisory Committee assumes the responsibility and authority for the administration and enforcement of these Commercial Covenants as set forth in Section 2.3, these Commercial Covenants may be amended by the affirmative vote of at least two-thirds of the members of the Board, the consent of the Advisory Committee, and the consent of the Declarant, as long as the Declarant owns any property described in Exhibits "A" or "B."

(c)    <u>By the Commercial Owners</u>.  After the authority of the Community Organization to administer these Commercial Covenants expires or is otherwise terminated, these Commercial Covenants may be amended by the affirmative vote of at least 67% of the total votes (as determined in the manner to be set forth in the Advisory Committee's by-laws) of the Commercial Owners and the consent of the Declarant, as long as the Declarant owns any property described in Exhibits "A" and "B."

(d)    <u>Validity and Effective Date of Amendments</u>.  Amendments to these Commercial Covenants shall become effective upon recordation in the Public Records unless a later effective date is specified therein.  Any procedural challenge to an amendment must be made within six months of its recordation or such amendment shall be presumed to have been validly adopted.  In no event shall a change of conditions or circumstances operate to amend any provisions of these Commercial Covenants.

No amendment may directly or indirectly remove, revoke, or modify any right or privilege, nor impose any obligation upon, of the Declarant without its written consent.

11.3.    <u>Severability</u>.  Invalidation of any provision of these Commercial Covenants, in whole or in part, or any application of a provision of these Commercial Covenants by judgment or court order shall in no way affect any other provisions or applications.

11.4.    <u>Cumulative Effect; Conflict</u>.  The covenants, restrictions, and provisions of these Commercial Covenants shall be cumulative with any additional declaration or other covenants and

restrictions applicable to any portion of the Commercial Properties or the La Cantera Community.

11.5.   <u>Commercial Ownership of Commercial Parcel by Government</u>.  Declarant shall have the right to exempt the United States, the State of Texas, Bexar County, the City of San Antonio, or any related entity, as the Commercial Owner of a Commercial Parcel, from any of the restrictions contained in the Governing Documents, if such exemption is required by such governmental entity.

11.6.   <u>COMPLIANCE</u>.  EVERY COMMERCIAL OWNER AND OCCUPANT OF ANY COMMERCIAL PARCEL SHALL COMPLY WITH THE GOVERNING DOCUMENTS. SUBJECT TO THE PROVISIONS OF THE MASTER COVENANTS REGARDING DISPUTE RESOLUTION, FAILURE TO COMPLY SHALL BE GROUNDS FOR AN ACTION BY THE COMMUNITY ORGANIZATION, THE ADVISORY COMMITTEE OR, IN A PROPER CASE, BY ANY AGGRIEVED COMMERCIAL OWNER(S), TO RECOVER SUMS DUE, FOR DAMAGES OR INJUNCTIVE RELIEF, OR FOR ANY OTHER REMEDY AVAILABLE AT LAW OR IN EQUITY, IN ADDITION TO THOSE ENFORCEMENT POWERS GRANTED IN THESE COMMERCIAL COVENANTS.

EACH COMMERCIAL OWNER SHALL INDEMNIFY AND HOLD HARMLESS THE COMMUNITY ORGANIZATION AND THE ADVISORY COMMITTEE FROM ANY LOSS, DAMAGES, AND EXPENSES, INCLUDING COUNSEL FEES, WHICH IT MAY INCUR AS A RESULT OF THE FAILURE OF SUCH COMMERCIAL OWNER, ANY TENANT OF SUCH COMMERCIAL OWNER, OR ANY CONTRACTOR, EMPLOYEE, OR AGENT OF SUCH COMMERCIAL OWNER ACTING WITHIN THE SCOPE OF HIS CONTRACT, AGENCY OR EMPLOYMENT, TO COMPLY WITH THE GOVERNING DOCUMENTS.

11.7.   <u>NOTICE OF SALE OR TRANSFER OF TITLE</u>.  ANY COMMERCIAL OWNER DESIRING TO SELL OR OTHERWISE TRANSFER TITLE TO HIS OR HER COMMERCIAL PARCEL SHALL GIVE THE COMMUNITY ORGANIZATION OR, UPON ITS INCORPORATION, THE ADVISORY COMMITTEES, AT LEAST SEVEN DAYS' PRIOR WRITTEN NOTICE OF THE NAME AND ADDRESS OF THE PURCHASER OR TRANSFEREE, THE DATE OF SUCH TRANSFER OF TITLE, AND SUCH OTHER INFORMATION AS MAY REASONABLY BE REQUIRED.  THE TRANSFEROR SHALL CONTINUE TO BE JOINTLY AND SEVERALLY RESPONSIBLE WITH THE TRANSFEREE FOR ALL OBLIGATIONS OF THE COMMERCIAL OWNER, INCLUDING ASSESSMENT OBLIGATIONS, UNTIL THE DATE UPON WHICH SUCH NOTICE IS RECEIVED BY THE COMMUNITY ORGANIZATION OR THE ADVISORY COMMITTEE, NOTWITHSTANDING THE TRANSFER OF TITLE.

11.8.   <u>Notice</u>.  Except as may otherwise be provided in these Commercial Covenants, all notices, demands, bills, statements, or other communications hereunder shall be in writing and shall be served personally or shall be mailed by registered, certified or first class mail, postage prepaid:

(a)    if to a Commercial Owner, at the address which the Commercial Owner has designated in writing and filed with the Community Organization or the Advisory Committee or, if no such address have been designated, at the address of such Commercial Owner's Commercial Parcel; or

(b)    if to the Community Organization or the Advisory Committee, at the address of the respective principal offices or at such other address as shall be designated by notice in writing to the Members pursuant to this Section; or

(c)    if to the Declarant, at the address of the Declarant's principal place of business in the State of Texas or at such other address as shall be designated by notice in writing to the Commercial Owners pursuant to this Section.

All such notices shall, for all purposes, be deemed delivered (a) upon personal delivery to the party or address specified above; or (b) on the third (3rd) day after mailing when mailed by registered, certified, or first class mail, postage prepaid, and properly addressed.

11.9.   <u>Captions</u>.  Titles or captions of Sections contained in these Commercial Covenants are inserted only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of these Commercial Covenants or the intent of any provision hereof.

11.10. <u>Applicable Law</u>.  These Commercial Covenants shall be construed and interpreted under Texas law.

11.11. <u>Exhibits</u>.  Exhibits "A," "B," and "C" attached to these Commercial Covenants are incorporated by this reference and amendment of such exhibits shall be governed by the amendment provisions of these Commercial Covenants.

[SIGNATURES ON NEXT PAGE]

-22-

IN WITNESS WHEREOF, the undersigned Declarant has executed these Commercial Covenants this *15th* day of *march*, 1996.

DECLARANT:      LA CANTERA DEVELOPMENT COMPANY, a Delaware corporation qualified to do business in Texas

By: *Glen E Mills*

Its: *Asst. Vice President*

THE STATE OF TEXAS     )
                       ) REPRESENTATIVE ACKNOWLEDGMENT
COUNTY OF *Bexar*     )

This instrument was acknowledged before me on the *15th* day of *march*, 1996 by *Glen E. Mills*, the *Asst. Vice President* of La Cantera Development Company, a Delaware corporation, on behalf of said corporation.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this *15* day of *march*, 1996.



*Linda L. Calvert*
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

*LINDA L. CALVERT*
[Print or Type Name of Notary]

My Commission Expires:
*9-13-97*

VOL 6701 PG0903

**PAPE-DAWSON** **ENGINEERS**
CIVIL & ENVIRONMENTAL

9310 BROADWAY, BUILDING II
SAN ANTONIO, TEXAS 78217-5987

(210) 824-9494
FAX 824-3491

Exhibit "A"

## FIELD NOTES

### FOR

### THE OPTION PARCEL

A 9.29 acres, or 404,672 square feet tract of land, out of the northeast corner of the Comanche Creek Irrigation Company Survey No. 437, Abstract 888, County Block 4724, and out of the Texas Central Railway Company Survey No. 599, Abstract 1071, County Block 4762 and said 9.29 acres of land being situated within New City Block 14859 of the City of San Antonio, Texas and being more particularly described by metes and bounds as follows:

| | |
|---|---|
| BEGINNING: | At the easternmost point of Fiesta Texas Subdivision Unit 2, Block 9, NCB 18339 as recorded in Volume 9531, Page 31 of the Bexar County Deed and Plat Records, said point being on the south boundary of said 9.29 acre tract; |
| THENCE: | S 81°13'18" W, a distance of 81.84 feet to an angle point; |
| THENCE: | N 46°10'59" W, a distance of 127.26 feet to an angle point; |
| THENCE: | N 79°51'31" W, a distance of 89.77 feet to an angle point; |
| THENCE: | S 76°38'37" W, a distance of 220.00 feet to an angle point; |
| THENCE: | S 37°25'50" W, a distance of 95.00 feet to an angle point; |
| THENCE: | S 09°52'47" W, a distance of 130.00 feet to an angle point; |
| THENCE: | S 71°39'56" W, a distance of 80.84 feet to an angle point; |
| THENCE: | N 28°05'37" E, a distance of 500.73 feet to an angle point; |
| THENCE: | N 10°00'22" W, a distance of 857.68 feet to an angle point; |
| THENCE: | N 56°17'53" E, a distance of 397.87 feet to an angle point; |
| THENCE: | S 24°10'27" W, a distance of 69.03 feet to an angle point; |
| THENCE: | S 14°08'01" E, a distance of 142.41 feet to at a point on curve of a non-tangent curve; |
| THENCE: | Southerly with a curve to the left, said curve having a radial bearing of S 70°23'25" E, a radius of 483.00 feet, a central angle of 37°36'35", a chord bearing and distance of S 00°48'17" W, 311.39 feet, and an arc length of 317.05 feet at a point of intersection with a non-tangent line; |

THENCE:          S 18°00'00" E, a distance of 198.34 feet to an angle point;

THENCE:          S 30°05'41" E, a distance of 35.79 feet to an angle point;

THENCE:          S 18°00'00" E, a distance of 245.13 feet to an angle point;

THENCE:          S 29°18'36" E, a distance of 15.30 feet to an angle point;

THENCE:          S 18°00'00" E, a distance of 338.59 feet to an angle point;

THENCE:          S 71°39'56" W, a distance of 58.06 feet to the POINT OF BEGINNING and containing 9.2924 acres, in the City of San Antonio, Bexar County, Texas.

### THIS PROPERTY DESCRIPTION IS
### NOT BASED ON A FIELD SURVEY

Prepared by:     Pape-Dawson Consulting Engineers, Inc.
Job No:          3726-15
Date:            March 11, 1996
Doc Id:          M960308A1.BM

VOL 9701 PG0905

## EXHIBIT "B"

### Land Subject to Annexation

Any and all real property located within five miles of the perimeter boundary of the real property described in Exhibit "A" to the La Cantera Master Covenants and Easements, which Exhibit "A" is incorporated as if fully set forth herein.

## EXHIBIT "C"

### Initial Use Restrictions and Rules

Land uses within the Commercial Properties shall conform to the requirements of and the restrictions set forth in those Commercial Covenants, any Supplemental Declaration, and any other applicable covenants or restrictions of record, all of which shall be enforceable as if fully incorporated in these Commercial Covenants. In addition, the following restrictions shall apply to all of the Commercial Properties unless and until such time as they are amended, modified, repealed or limited pursuant to the Commercial Covenants.

1.    Restricted Activities. The following activities are prohibited within the Commercial Properties unless expressly authorized by, and then subject to such conditions as may be imposed by, the Community Organization, or the Advisory Committee, as the case may be:

(a)    Any activity which tends to cause an unclean, unhealthy or untidy condition to exist outside of enclosed structures on the Commercial Parcel;

(b)    Any activity which emits foul or obnoxious odors, fumes, dust, smoke, or pollution outside the Commercial Parcel or which creates noise, unreasonable risk of fire or explosion, or other conditions which tend to disturb the peace or threaten the safety of the occupants and invitees of other Commercial Parcels, provided, nothing herein shall preclude normal and customary operation of any restaurant or hospital facility;

(c)    Outside burning of trash, leaves, debris or other materials;

(d)    Obstruction or rechanneling of drainage flows after location and installation of drainage swales, storm sewers, or storm drains, except that the Declarant and the Community Organization shall have such right;

(e)    Outdoor storage of goods, materials, or equipment, except that, with the consent of the Community Organization, the following shall be permitted: (1) outdoor storage of building materials on a Commercial Parcel during the construction of improvements on such Commercial Parcel; (2) outdoor retail displays; (3) outdoor dining facilities; and (4) the storage of inventory requiring outdoor storage incidental to a business or enterprise;

(f)    The placement of any sign unless prior written approval has been obtained pursuant to architectural standards provisions of these Commercial Covenants; and

(g)    Subdivision of a Commercial Parcel without the consent of the Declarant as long as it owns any property on Exhibits "A" or "B" and, thereafter, without the consent of the Advisory

Committee.

2.    <u>Prohibited Conditions</u>.  The following shall be prohibited within the Commercial Properties:

(a)    Plants, animals, devices or other things of any sort whose activities or existence in any way is noxious, dangerous, unsightly, unpleasant, or of a nature as may diminish or destroy the enjoyment of the Commercial Properties;

(b)    Sprinkler or irrigation systems of any type which draw water from creeks, streams, rivers, ponds, wetlands, canals, or other ground or surface waters within the Commercial Properties, except that the Community Organization shall be entitled to draw water from such sources, pursuant to permits, for the purpose of irrigating the La Cantera Community;

(c)    Septic systems, other than those installed by or with the permission of Declarant, if any;

(d)    Any fence, wall, hedge, or shrub planting which does or tends to create a traffic or sight problem;

(e)    Tents, trailers, mobile homes, or any structure of a temporary nature, such as a tent, shack, or utility shed, except for construction trailers during the construction of improvements on the Commercial Parcel and temporary party tents for special events approved by the Community Organization; and

(f)    Above ground sewers, electrical lines, water lines, telephone lines or other utilities except (a) as may be approved by the Declarant, as long as it owns any property described in Exhibits "A" or "B";  (b) as may be constructed as a part of the original development and/or sale by the Declarant; (c) as may be permitted by the terms of any easement affecting the Commercial Properties and recorded prior to the recording of these Commercial Covenants;  (d) for temporary lines as may be required during construction; or (e) as may otherwise be required by law or safety considerations.

3.    <u>Prohibited Uses</u>.  In addition to uses which are restricted by other recorded covenants, conditions, restrictions or easements, the following uses are prohibited within the Commercial Properties:

(a)    Any single family residential use;

(b)    Facilities for the sales, rental or service of trailers or mobile homes;

(c)    Oil, gas or mineral exploration, drilling, boring, development, refining,

Exhibit "C"
Page 2 of 4

quarrying, or mining operations and all construction and equipment incident thereto, oil or gas wells, related equipment or facilities, excavations for minerals, and mine shafts.

(d)      Junk yards, scrap metal yards, automobile storage yards, automobile used parts and/or dismantling operations and sanitary landfills, except that nothing herein shall preclude recycling centers established solely for the collection and sorting of household recyclable materials;

(e)      Commercial excavation of building or construction materials, except in the usual course of construction of improvements;

(f)      Dumping, storage, disposal, incineration, treatment, processing or reduction of garbage, or refuse of any nature;

(g)      Flea markets, and businesses which regularly engage in fire and bankruptcy sale operations;

(h)      Truck terminals and truck stop-type facilities, including truck parking lots (except as may be incidental to a use which is not prohibited);

(i)      Massage parlors, unless part of an approved fitness facility, and businesses primarily engaged in the sale of obscene or pornographic materials or in the provision of entertainment featuring topless or nude performers.

(j)      Bottling works;

(k)      Cemeteries;

(l)      Concrete or asphalt batching plants (permanent);

(m)      Dry cleaning plants (except a plant that is exclusively a part of a retail dry cleaning store);

(n)      Engine and motor repair facilities;

(o)      Farms, ranches, gardens, or orchards (except as an interim use pending development to qualify for any special agricultural and open space tax elections);

(p)      Heavy machinery sales and storage, facilities;

(q)      Kennels (outdoor pens);

(r)      Mausoleums;

(s)    Mortuaries or funeral parlors;

(t)    Portable building sales;

(u)    Drive-In theaters;

(v)    Tire retreading and capping facilities;

(w)    Transfer storage facilities and baggage terminals;

(x)    Truck and bus leasing facilities;

(y)    Truck and bus repair facilities; and

(z)    Any activity which violates local, state or federal laws or regulations.

14262\5
3/15/96

Any provision herein which restricts the sale, rental, or use of the described real property because of race is invalid and unenforceable under Federal law.
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on

## MAR 2 1 1996

COUNTY CLERK BEXAR COUNTY, TEXAS

Filed for Record in:
BEXAR COUNTY, TX
GERRY RICKHOFF, COUNTY CLERK

On  Mar 20 1996

At  2:44pm

Receipt #:      208367
Recording:       71.00
Doc/Mgmt :        6.00

Doc/Num  :  96- 0040610

Deputy ~Jane Hernandez

VOL b701 PG0911